**RAINES FELDMAN LITTRELL LLP**
Kyra E. Andrassy (State Bar No. 207959)
*kandrassy@raineslaw.com*
Robert S. Marticello (State Bar No. 244256)
*rmarticello@raineslaw.com*
Stephen M. Mott (State Bar No. 362642)
*smott@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Counsel for Debtor
Hilbert Group, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT – SANTA ANA DIVISION**

In re:

HILBERT GROUP, LLC,

Debtor in Possession.

Case No.: 8:26-bk-10578-MH

Chapter: 11

**MOTION PURSUANT TO 11 U.S.C. § 364(b) TO ENTER INTO PREMIUM FINANCE AGREEMENT WITH FIRST INSURANCE FUNDING, A DIVISION OF LAKE FOREST BANK & TRUST COMPANY, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF HOWARD GROBSTEIN IN SUPPORT THEREOF**

[Filed concurrently with an Application for Order Shortening Time for Notice]

<u>Hearing Information</u>:
DATE: TBD
TIME: TBD
CTRM: 6C

**TO THE HONORABLE MARK HOULE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

Hilbert Group, LLC, the debtor and debtor-in-possession (the "**Debtor**"), hereby seeks Court approval under 11 U.S.C. § 364(c)(2) to enter into a premium financing agreement with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A., to

finance the premiums for new property insurance for the real property owned by the Debtor and for liability insurance to protect the Debtor from claims. In support of the Motion, the Debtor submits the following memorandum of points and authorities and the declaration of Howard Grobstein in support thereof, and respectfully represents as follows:

## I. BASIS FOR EXPEDITED RELIEF

The Debtor is under new management and is concerned that the current policy is one that was placed by the Debtor's former asset manager, Continuum Analytics, and that if Continuum defaults on any portion of its share of the payments, it puts the Debtor's insurance coverage into jeopardy. Accordingly, the Debtor is seeking to place its own insurance effective on or about July 10, 2026. The Debtor does not have sufficient funds on hand to pay the entire premium payments so must finance the premiums. The Motion is being filed promptly after the premium finance agreement terms were finalized and after the premium finance company approved the form of the Motion, which was a requirement of the finance company.

## II. BACKGROUND

On February 24, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned case. The Debtor is operating as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this case and no official committees have been appointed or designated. This case constitutes a single asset real estate case.

The Debtor owns a shopping center in Temecula, California, at 27415, 27445, 27481, 27515, and 27535 Jefferson Avenue (the "Property"). The Property is a multi-parcel retail center located along the I-15 freeway and contains approximately 65,910 square feet of combined building area consisting of in-line retail stores and a freestanding pad building. The Property is located within Temecula's primary retail corridor and includes surface parking.

The Property has 20 retail tenants and is 60% leased and generates gross monthly rents of approximately $105,000. It is in average condition. It is subject to a lien in favor of DS PE Holdco, LLC, which purchased the note from Nano Banc and asserts that it is currently owed approximately $13,317,551.80. There are defaulted property taxes of approximately $172,356.51.

As a result of the Covid 19 pandemic, the Debtor lost a significant number of tenants that it has been unable to replace. The vacancies and corresponding revenue reduction interfered with the Debtor's ability to make regur payments on its secured obligations. After Nano Banc declined to offer another forbearance agreement to the Debtor, it initiated foreclosure proceedings.

In order to guide the Debtor through its chapter 11 and because of concerns about former management, it was determined that retaining Howard Grobstein as the Debtor's manager for the pendency of this case would be in the best interests of all concerned. His appointment became effective April 16, 2026. Because of delays in getting financial information from prior management, the Debtor is only now putting together reliable 13-week cash flow projections and currently has consent to use cash only for critical operating expenses.

The Property is currently insured under a group policy believed to have been obtained by Continuum Analytics, which is an asset manager for a number of different special purpose entities, including a number that have chapter 11 bankruptcy cases pending in the Central District of California and an unknown number of entities that have not sought bankruptcy protection. The Debtor understands that because of the way that the financing for the insurance policies was structured, a default by one entity in payment of its share of the premium may jeopardize the coverage for the other entities. Because the Debtor does not have control over that and given the importance of having sufficient insurance coverage, the Debtor, under Mr. Grobstein's supervision, has obtained quotes for standalone insurance policies. Subject to approval of this Motion, (1) Maxum Indemnity Company is prepared to issue a liability insurance policy with a general aggregate limit of $2 million and a per

occurrence limit of $1 million, a copy of which is attached as **Exhibit 1**, (2) AXIS Surplus Insurance Company, is prepared to issue a property insurance policy covering all real and personal property, and a copy of the proposal is attached as **Exhibit 2**, and (3) StarStone National Insurance Company and Scottsdale Insurance Company will issue umbrella coverage (together, these are referred to as the "**Policies**"). The cumulative annual premiums for the Policies, with fees and taxes, total $90,339.15. The Debtor has $174,053.00 in cash on hand as of July 1, 2026, with an adequate protection payment of approximately $68,000 due in a couple of weeks.

FIRST, which is a division of a national bank engaged in the business of financing insurance premiums, is willing to finance the $90,339.15 in premiums, taxes, and fees for the Policies, subject to Court approval, with a down payment of $24,684.14 and nine payments of $7,727.12 due on the first of each month, starting on or about July 10, 2026. The annual percentage rate is 14.0%. To secure the repayment of this amount, any late charges, attorney's fees and expenses, and other costs under the financing agreement (collectively, the "**Indebtedness**"), the Debtor will grant and assign to FIRST a first priority lien on, and security interest in, the Policies, including all returned premiums and unearned premiums and all other collateral defined in the Finance Agreement (collectively, the "**Finance Agreement Collateral**"). A copy of the Finance Agreement is attached as **Exhibit 3**. Pursuant to the Finance Agreement, in the event of a default, the Debtor irrevocably appoint FIRST as the Debtor's attorney-in-fact with full power of substitution and authority, to: (a) cancel the Policies; (b) receive all sums assigned to it, including the Finance Agreement Collateral; and (c) execute and deliver, on the Debtor's behalf, all documents relating to the Policies in furtherance of the Finance Agreement.

In order to reduce the cash the estate must fund at binding, Trustee Insurance Services is willing to advance a portion of the required down payment on the Debtor's behalf, with that advance to be repaid over five months. This means that upon Court approval of this Motion, the Debtor will need to pay FIRST $13,550.87, with nine monthly payments to FIRST of $7,727.12 starting approximately July 10, 2026. Trustee Insurance Services will fund the

balance of the deposit, which is $11,133.27, at 15% interest to be repaid over five months, which equates to $2,310.84 per month. There is no additional contract with Trustee Insurance Services other than as set forth in this Motion.

The Policies are essential to the preservation of the Debtor's assets and business and required by its secured creditors and the Office of the United States Trustee. The form of the proposed order required by FIRST is attached as **Exhibit 4**.

## III. LEGAL ARGUMENT

Under section 1108 of the Bankruptcy Code, the Debtor is authorized to operate its business. Section 363(c )(1) authorizes a debtor-in-possession to enter into ordinary course transactions and to use property of the estate in the ordinary course of business. The Debtor intends to enter into the Finance Agreement in the ordinary course of its affairs and believes that honoring its obligations under the Finance Agreement is in the best interests of the estate.

Section 364 of the Bankruptcy Code authorizes the Debtor to obtain postpetition financing in the manner proposed in the Finance Agreement. Specifically, Section 364(c) provides, in pertinent part, that if the debtor is unable to obtain credit solely on an unsecured basis, the court "may authorize the obtaining of credit or the incurring of debt – (2) secured by a lien on property of the estate that is not otherwise subject to a lien." 11 U.S.C. § 364(c)(2). By extending secured credit under the Finance Agreement, FIRST is enabling the Debtor to obtain coverage under the Policies, subject to FIRST's first-priority lien and security interest. Additionally, FIRST is extending financing under the Finance Agreement in good faith and is entitled to the protections of Section 364(e).

The Debtor and FIRST have reached an agreement that the adequate protection appropriate for this financing, subject to the approval of the Court, is as follows:

a. The Debtor is authorized and directed to timely make all payments due under the Finance Agreement and FIRST is authorized to receive and apply such payments to the Indebtedness pursuant to the Finance Agreement.

b. If the Debtor does not make any of the payments under the Finance Agreement as and when due, the stay of Section 362(a) (to the extent otherwise applicable) shall automatically lift (without further order of the Court) to enable FIRST and/or third

parties, including insurance companies providing the coverage under the Financed Policies, to take all steps necessary and appropriate to cancel the Financed Policies, recover and collect the Finance Agreement Collateral, and apply the Finance Agreement Collateral to the Indebtedness. In exercising such rights, FIRST and/or third parties shall comply with the notice and other relevant provisions of the Finance Agreement.

c. If any Indebtedness remains unpaid after application of the Finance Agreement Collateral, following an event of a default or otherwise, such unpaid amount shall be treated as an administrative expense claim pursuant to Section 503(b)(1) in the Debtor's bankruptcy estate.

d. If there are excess returned premiums, unearned premiums, or other Finance Agreement Collateral after application of the Finance Agreement Collateral to the Indebtedness, following and event of default or otherwise, the excess shall be turned over to the Debtor or any subsequently appointed trustee (under Chapter 7 or 11).

It is common practice for insurance premium finance lenders such as FIRST to require that the Debtor grant a security interest in the insurance policies financed in exchange for financing. Absent a first-priority lien on and security interest in the Finance Agreement Collateral, FIRST would not enter into the Finance Agreement. Further, the Debtor believes that it would be unable to secure such financing on an unsecured basis from another lender on economic terms comparable to those under the Finance Agreement. The Debtor would be unable to take out the Financed Policies and obtain coverage in the absence of the Finance Agreement, and the Finance Agreement Collateral would not exist but for the Finance Agreement. The Debtor is seeking the consent of its secured creditor to the use of cash to pay the premiums for the Policies but, in the event such affirmative consent is not forthcoming, seeks authorization to use its cash to pay for the Policies because the Policies insure its collateral and protect the estate from liability for any injuries or incidents during the administration of this case.

The Debtor has determined in its business judgment that the Finance Agreement is the Debtor's best option and provides the most favorable terms. The Debtor believes the Finance Agreement and its terms are commercially fair and reasonable. The Debtor is required to maintain adequate insurance coverage and, without it, would be unable to operate. Moreover, approval of

the Finance Agreement will ensure that the Debtor can continue to operate and will not prejudice the legitimate interests of creditors and other parties in interest.

Accordingly, the Debtor believes that the Motion may be granted.

## IV. CONCLUSION

WHEREFORE, the Debtor requests that the Court enter an order in the form attached as Exhibit 4 and grant such other and further relief as the Court may deem just and appropriate

Dated: July 1, 2026

**RAINES FELDMAN LITTRELL LLP**

By: */s/ Kyra E. Andrassy*
Kyra E. Andrassy
Counsel for Hilbert Group, LLC

**DECLARATION OF HOWARD GROBSTEIN**

I, Howard Grobstein, declare as follows:

1. Effective April 16, 2026, I am the Manager for Hilbert Group, LLC, the debtor and debtor-in-possession in the above captioned case. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the *Motion Pursuant to 11 U.S.C. § § 364(b) to Enter Into Premium Finance Agreement with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A.* (the "**Motion**"). Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2. On February 24, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor owns a shopping center in Temecula, California, at 27415, 27445, 27481, 27515, and 27535 Jefferson Avenue (the "Property"). The Property is a multi-parcel retail center located along the I-15 freeway and contains approximately 65,910 square feet of combined building area consisting of in-line retail stores and a freestanding pad building. The Property is located within Temecula's primary retail corridor and includes surface parking. The Property has 20 retail tenants and is 60% leased and generates gross monthly rents of approximately $105,000. It is in average condition. It is subject to a lien in favor of DS PE Holdco, LLC, which asserts that it is currently owed approximately $13,317,551.80. There are defaulted property taxes of approximately $172,356.51.

3. Because of concerns about former management, I was appointed as the Debtor's manager effective April 16, 2026. I intend to sell the Property.

4. The Property is currently insured under a group policy believed to have been obtained by Continuum Analytics, which I understand to be an asset manager for a number of different special purpose entities, including a number that have chapter 11 bankruptcy cases pending in the Central District of California and an unknown number of entities that have not sought bankruptcy protection. Based on a phone conversation with the Debtor's current

insurance agent, because of the way that the financing for the insurance policies was structured, a default by one entity in payment of its share of the premium may jeopardize the coverage for the other entities. Because the Debtor does not have control over that and given the importance of having sufficient insurance coverage, I obtained quotes for a standalone insurance policy. A true and correct copy of the proposal from Maxim Indemnity Company for a liability policy is attached as **Exhibit 1**. A true and correct copy of the proposal from AXIS Surplus Insurance Company for a property insurance policy is attached as **Exhibit 2**. I am informed that StarStone National Insurance Company and Scottsdale Insurance Company will issue umbrella coverage (together, the liability, property and umbrella policies are referred to as the "Policies"). The cumulative annual premiums for the Policies, with fees and taxes, total $90,339.15.

5. FIRST, which I am informed is a division of a national bank engaged in the business of financing insurance premiums, is willing to finance the $90,339.15 in premiums, taxes, and fees for the Policies, subject to Court approval. A true and correct copy of the Finance Agreement is attached as **Exhibit 3**. The form of the order required by FIRST is attached as **Exhibit 4**.

6. In order to reduce the cash the estate must fund at binding, Trustee Insurance Services, who was the broker I used and have used before in a number of other cases, is willing to advance a portion of the required down payment on the Debtor's behalf, with that advance to be repaid over five months. This means that upon Court approval of this Motion, the Debtor will need to pay FIRST $13,550.87, with nine monthly payments to FIRST of $7,727.12 starting on or about July 10, 2026. Trustee Insurance Services will fund the balance of the deposit, which is $11,133.27, at 15% interest to be repaid over five months, which equates to $2,310.84 per month. There is no additional contract with Trustee Insurance Services other than as set forth in this Motion. As of July 1, 2026, the Debtor has $174,053 in cash on hand. Because of delays in getting financial information from former management, I am just now able to prepare 13-week cash flow projections that I believe are accurate and which I will submit to the secured creditor for review. I intend to seek Court

approval of either a stipulation for the use of cash collateral or a motion for the use of cash collateral. Until then, I have been seeking consent on an expense by expense basis. I do not believe that utilizing the cash on hand to pay for the annual premium in one lump sum would be prudent and would likely cause the Debtor to need to seek debtor-in-possession financing to cover its other expenses pending a sale of the Property.

7. The Policies are essential to the preservation of the Debtor's assets and business and required by its secured creditors and the Office of the United States Trustee. Based on my experience as a fiduciary and because Trustee Insurance Services solicited insurance proposals and financing proposals on my behalf and the one presented to the Court is the best, I believe that the Finance Agreement offers the best terms available and that the Debtor would be unable to secure such financing on an unsecured basis from another lender on economic terms comparable to those under the Finance Agreement. The Debtor would be unable to take out the Financed Policies and obtain coverage in the absence of the Finance Agreement because of the cash on hand, and the Finance Agreement Collateral would not exist but for the Finance Agreement.

8. The Debtor is requesting that the hearing on the Motion be set on shortened time because the Policies are set to be bound on or about July 10, 2026. I am concerned that the current property and liability policies were placed by the Debtor's former asset manager, Continuum Analytics, and that if Continuum defaults on any portion of its share of the payments, it puts the Debtors' insurance coverage into jeopardy. The Debtor does not have sufficient funds on hand to pay the entire premium payments so must finance the premiums. The Motion was filed promptly after the final figures were received from the insurance broker and after the legal team at the premium finance company, which requested to approve the Motion before it was filed, approved the form of the Motion.

I declare under penalty of perjury under the laws of the United States of America that

\\

\\

\\

the foregoing is true and correct.

Executed on this 1st day of July, 2026 at Woodland Hills, California.

Howard Grobstein

# EXHIBIT 1

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**May 18, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

| | |
|---|---|
| **Applicant:** | Hilbert Group LLC<br>520 Newport Center Dr Ste 480<br>Newport Beach, CA 92660 |
| **Submission #:** | APP114712274 |
| **Policy Period:** | 06/01/2026 12:01 AM To 06/01/2027 12:01 AM |
| **Coverage:** | Liability |
| **Issuing Company:** | Maxum Indemnity Company |

## CALIFORNIA SHORT RATE CANCELLATION PENALTY DISCLOSURE

Please be advised that if you request cancellation of your policy prior to the expiration, the policy may be cancelled at a rate less than pro rata.

Please refer to your policy for specific terms and conditions.

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**May 18, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

| | |
|---|---|
| **Applicant:** | Hilbert Group LLC<br>520 Newport Center Dr Ste 480<br>Newport Beach, CA 92660 |
| **Submission #:** | APP114712274 |
| **Policy Period:** | 06/01/2026 12:01 AM To 06/01/2027 12:01 AM |
| **Coverage:** | Liability |
| **Issuing Company:** | Maxum Indemnity Company |

---

We are pleased to submit our proposal for the above captioned applicant.

Please read the attached quote carefully as coverage offered may be more limited than coverage requested.

Note :

Minimum earned premium may apply to this policy. See attached carrier quote for specifics. Please note that all fees are fully earned at inception.

TRIA coverage if applicable is offered on the attached carrier's quote.

Please review any minimum and deposit, audit, and/or cancellation provisions on the attached carrier quote for details regarding possible return premiums and additional premium charges.

I look forward to hearing from you, and please call if you have any questions.

Thank you for your business.

Regards,

Tom Mullins
President
RT Specialty
Tom.Mullins@rtspecialty.com
312-878-8318

Kevin Verkler
Vice President
RT Specialty
kevin.verkler@rtspecialty.com
312-761-1053

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Cost Summary

| | |
|---|---|
| General Liability Premium | $14,042.00 |
| Policy Fee | $500.00 |
| Inspection Fee | $160.00 |
| CA Surplus Lines Tax | $426.06 |
| CA Stamp Fee | $25.56 |
| **Total Policy Cost** | **$15,153.62** |

**Minimum Earned**

Note: There may be a minimum earned on this policy. Please refer to the carrier quote for more details on the minimum earned percentage.

**Agent Commission: 11.00%**

**Disclosures**

RT Specialty is typically compensated through commission from the insurer for the placement of policies in most transactions. The amount of the commission varies by insurance line and by carrier. RT Specialty might also receive additional compensation. In order to place the insurance requested we may charge a reasonable fee for additional services such as performing a risk analysis, comparing policies, processing submissions, communication expenses, inspections, working with underwriters on the coverage proposal, issuing policies, or servicing the policy after issuance. Any fees charged are fully earned at inception of the policy. Third-party inspection or other fees may be separately itemized upon request. Our fees are applied to new policies, renewal policies, and endorsements. Fees applicable to each renewal and endorsement will be set forth in the quotes. It is the insurance carrier's decision whether to offer the insurance quoted, and your client's decision whether to accept the quote. Our fee is not imposed by state law or the Insurer.

Depending upon the Insurer involved with your placement, we might also have an agreement with the Insurer that we are proposing for this placement that might pay us future additional compensation This compensation could be based on formulas that consider the volume of business placed with the Insurer, the profitability of that business, how much of the business is retained for the Insurer's account each year, and potentially other factors. The agreements frequently consider total eligible premium from all clients placed during a calendar year and any incentive or contingent compensation is often received at a future date. Because of variables in these agreements, we often do not have an accurate means at the time of placement to determine the amount of any additional compensation that might be attributable to any single placement. You, as the retail broker with the direct relationship with the Insured, must comply with all applicable laws and regulations related to disclosure of and consent and agreement to, compensation, and informing the Insured that it may request more information about producer or broker compensation that might be paid in connection with the Insured's placement. If we request a copy of any legally required insured consent or agreement, you will provide us with a copy. If you need additional information about the compensation arrangements for services provided by RT Specialty affiliates, please contact your RT Specialty representative.

RT Specialty is a division of RSG Specialty, LLC. RSG Specialty, LLC is a Delaware limited liability company and a subsidiary of Ryan Specialty, LLC. In California: RSG Specialty Insurance Services, LLC (License # 0G97516).

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Subjectivities

- Signed and completed Acord Application
- Due Diligence Forms (if required by state - Non-Admitted Only)
- Signed TRIA form if insured is accepting or rejecting terrorism coverage
- This quote is subject to receiving currently valued, acceptable loss runs for the last 5 policy terms prior to binding.
- Signed and completed Supplemental Application
- A written request to bind coverage is required prior to binding
- Please provide Inspection Contact Name and Phone Number at binding (email if available). Coverage is subject to a satisfactory inspection.

**The Subjectivities outlined above are required prior to binding. Please forward all requested information with your bind request. No coverage is considered bound until confirmed in writing and all subjectivities have been addressed.**

540 W. Madison, 8th Floor
Chicago, IL 60661
312-651-6214
-
-

| | |
|---|---|
| **Date:** | 5/18/2026 |
| **Attention:** | |
| **Agency:** | |
| **Regarding:** | Hilbert Group, LLC |
| **File Number:** | - |
| **Quoted By:** | Kevin Verkler |

# Insurance Quotation

| | |
|---|---|
| **Proposed Policy Period:** | 5/18/2026 to 5/18/2027 |
| **Issuing Carrier:** | Maxum Indemnity Company (Non-Admitted) **A.M. Best, Rating A+ XV** |
| **Primary Location:** | 27405 Jefferson Avenue, 27405-27435, Temecula, CA 92590-2602 |
| **Quote is Valid:** | Until 7/2/2026 |

We are pleased to offer the following quotation for coverage. Please review the attached quotation for accuracy. Our quotation reflects the coverages we are able to offer and may not always be exactly what you requested.

| | |
|---|---|
| General Liability | $14,042.00 |
| **Total** | **$14,042.00** |
| Commission | |

Terrorism Coverage as provided by the Federal Terrorism Risk Insurance Act can be obtained for an additional premium of $702, plus applicable taxes and fees.

**Remarks:**

The minimum earned premium is 25%.

This policy is subject to audit. In order to bind coverage, we must receive a written request by 7/2/2026.

**DISCLAIMER:**

This quotation is being offered on the basis shown above. It does not necessarily provide the terms, conditions and/or policy coverages requested in your submission. It is your responsibility as the insured's agent to review this quote to determine coverage adequacy.

Thank you for the opportunity to quote your business.

Kevin Verkler
Assistant Vice President

RSG Specialty LLC (Chicago, IL)
540 W. Madison, 8th Floor
Chicago, IL 60661

| | |
|---|---|
| **Date:** | 5/18/2026 |
| **Regarding:** | Hilbert Group, LLC |
| **Quoted By:** | Kevin Verkler |

## General Liability Quote

**Limits**

| | |
|---|---|
| **General Aggregate Limit** | $2,000,000 |
| **Products-Completed Operations Aggregate Limit** | Subject to General Aggregate |
| **Personal and Advertising Injury Limit** | $1,000,000 Each Occurrence |
| **Each Occurrence Limit** | $1,000,000 |
| **Damages to Premises Rented to You Limit** | $100,000 Per Location |
| **Medical Expenses Limit** | $5,000 Per Person |

| | |
|---|---|
| **Deductible** | None |
| **Defense** | In Addition to Limits |
| **Defense included in deductible** | Yes |
| **Deductible shall reduce policy limits** | No |

| Loc/St/Terr | Class Code No. | Classification | Exposures | PremOp Rate | Prod/CO Rate | Advanced Premium |
|---|---|---|---|---|---|---|
| 1/CA/012 | 46606 | Parking - public - shopping centers - maintained by lessee - (lessor's risk only) | a) 62,000 | 54.006 | INCL | $3,348 |
| 1/CA/012 | 61217 | Buildings or Premises - bank or office - mercantile or manufacturing - maintained by the insured (Lessor's risk only) (For-Profit) | a) 79,328 | 134.806 | INCL | $10,694 |

**Additional Coverages**

| Coverage | Notes | Exposures | Premium |
|---|---|---|---|
| CG2005 Additional Insured - Controlling Interest | **FULLY EARNED** | 1 | INCL |
| E1245 Assault And Battery Coverage Sublimit - General Liability - $25,000/$50,000 Limit | | 1 | INCL |

**Line of Business Subtotal Premium:** $14,042

**Legend** a) Area c) Cost m) Admissions p) Payroll s) Sales o) Other u) Units t) Each

RSG Specialty LLC (Chicago, IL)
540 W. Madison, 8th Floor
Chicago, IL 60661

**Date:** 5/18/2026
**Regarding:** Hilbert Group, LLC
**Quoted By:** Kevin Verkler

# Policy Forms

**Policy Level Forms**

| Form # | Form Description |
|---|---|
| PJ (1/1/2003) | Policy Jacket |
| DECC (1/1/2003) | Common Policy Declarations |
| D-2 (1/1/2020) | California Notice |
| E048 (1/2/2003) | Minimum Earned Premium |
| E1233 (1/1/2015) | Exclusion - Terrorism |
| E142 (5/1/2021) | Service of Suit, California |
| E849 (3/1/2010) | Forms and Endorsements Schedule |
| IL0021 (7/1/2002) | Nuclear Energy Liability Exclusion (Broad Form) |
| MISC001 (7/1/2023) | Claims Reporting |

**Commercial General Liability Forms**

| Form # | Form Description |
|---|---|
| DECBGL (7/1/2005) | Commercial General Liability Coverage Part Declarations |
| CG0001 (12/1/2025) | Commercial General Liability Coverage Form |
| CG0069 (12/1/2023) | Exclusion – Violation of Law Addressing Data Privacy |
| CG2005 (4/1/2013) | Additional Insured - Controlling Interest |
| CG2107 (5/1/2014) | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - Limited Bodily Injury Exception Not Included |
| CG2109 (6/1/2015) | Exclusion - Unmanned Aircraft |
| CG2132 (5/1/2009) | Communicable Disease Exclusion |
| CG2147 (12/1/2007) | Employment-Related Practices Exclusion |
| CG2165 (12/1/2004) | Total Pollution Exclusion With A Building Heating, Cooling And Dehumidifying Equipment Exception And A Hostile Fire Exception |
| CG2167 (12/1/2004) | Fungi or Bacteria Exclusion |
| CG2426 (7/1/2004) | Amendment Of Insured Contract Definition |
| CG9909 (12/1/2019) | Premium Audit Noncompliance Charge |
| E1226 (8/1/2014) | Limitation Of Coverage To Designated Premises Or Project |
| E1245 (3/1/2015) | Assault And Battery Coverage Sublimit - General Liability |
| E1432 (5/1/2024) | Perfluoroalkyl and Polyfluoroalkyl Substances |
| E1436 (5/1/2025) | Exclusion – Endocrine Disruptors |
| E1439 (2/1/2026) | Exclusion - Uninsured / Underinsured Commercial Tenants |
| E713 (8/1/2007) | Exclusion - Punitive or Exemplary Damages |

RSG Specialty LLC (Chicago, IL)
540 W. Madison, 8th Floor
Chicago, IL 60661

**Date:** 5/18/2026
**Regarding:** Hilbert Group, LLC
**Quoted By:** Kevin Verkler

| Form # | Form Description |
|---|---|
| E868 (9/1/2017) | Exclusion/Limitations - Combination Endorsement |
| Contains: | |
| E673 (07/01/2012) | Exclusion – Professional Services |
| E687 (09/01/2010) | Exclusion – Asbestos, Silica and Silica Dust |
| E711 (09/01/2010) | Exclusion – Lead |
| E831 (09/01/2010) | Exclusion – Breach of Contract |
| E763 (01/01/2009) | Cross Suits Exclusion |
| CG2154 (01/01/1996) | Exclusion – Designated Operations Covered By a Consolidated (Wrap-Up) Insurance Program |
| E714 (08/01/2007) | Exclusion – Unfair Competition |
| E348 (01/01/2003) | Amendment Deposit Premium and Minimum Premium |
| E704 (08/01/2007) | Amendment Premium Audit |
| E829 (01/01/2010) | Definition – Damages |

# The Hartford fact sheet

**Purpose-driven insurance leader.** The Hartford is a leader in property and casualty insurance, group benefits and mutual funds. We are proud to be widely recognized for our customer service excellence, sustainability practices, trust and integrity.

## The Hartford's businesses

**Business Insurance**

- Workers' Compensation
- Property
- General Liability
- Management & Professional Liability
- Umbrella & Excess
- Auto

Plus other specialized coverages including Bond, Credit & Political Risk, Cyber, Environmental, Inland and Ocean Marine, Multinational and more.

*The Hartford also offers wholesale solutions through Navigators, a brand of The Hartford, and assumed reinsurance coverage through Navigators Re.*

**Personal Lines** • Auto • Home • Renters • Umbrella

**Employee Benefits**

- Absence Management
- Group Income Protection Benefits, Life Insurance, Accidental Loss of Life and Severe Injury Benefits, and Accident & Health[1]
- Group Retiree Health
- Voluntary Benefits, including Critical Illness, Accidental Injury and Hospital Cash Benefits[1]

**Hartford Funds**

- Broad range of exchange-traded funds: both strategic beta and active ETFs
- Equity, fixed income and asset allocation mutual funds subadvised by Wellington Management and Schroders

## Key facts

- Founded: 1810
- Employees: approximately 19,100
- Headquarters: Hartford, Connecticut
- The Hartford insures more than 1 million small businesses.
- Sells products primarily through a network of independent agents and brokers.
- Only nationally endorsed direct auto and home insurance program for AARP's nearly 38 million members.

## Our history



- The Hartford's trademark logo echoes the majestic stag depicted in Sir Edwin Landseer's 1851 painting Monarch of the Glen.
- The Hartford provided insurance for the only home Abraham Lincoln ever owned.



- Babe Ruth purchased a policy from The Hartford in 1920 for protection against disability.
- Since 1947, more than 112 million children have been deputized as part of the company's Junior Fire Marshal® program – one of the oldest corporate-sponsored public education programs in the country.



- The Golden Gate Bridge opened in 1937. Construction of the bridge was bonded by The Hartford.

The Hartford

## Financial highlights

(as of 12/31/2024)

**$26.5B** Revenues

**$16.4B** Total stockholders' equity

## Market rankings

**# 1** in fully insured disability inforce[2]

**# 2** workers' compensation insurer, based on direct written premiums[3]

**# 2** commercial multi-peril carrier, based on direct written premiums[3]

**# 3** in fully insured disability sales[2]

**# 3** combined fully insured life and disability inforce[2]

| Financial strength | A.M. Best | Moody's | S&P |
|---|---|---|---|
| Hartford Fire Insurance Company | A+ | A1 | A+ |
| Hartford Life and Accident Insurance Company | A+ | A1 | A+ |
| Navigators Insurance Company | A+ | NR | A+ |

- Hartford Fire Insurance Company and Hartford Life and Accident Insurance Company ratings are on stable outlook at A.M. Best, Moody's and Standard and Poor's
- Navigators Insurance Company ratings are on stable outlook at A.M. Best and Standard and Poor's

NR – Not rated

## 2024 total premiums

**$22.6B** Total premium all business segments

**$6.4B** Group Benefits fully insured ongoing premiums

## Total mutual funds segment assets under management

**$139.6B**

## P&C written premiums

**$16.9B**




[1] Group Income Protection Benefits (also known as Group Disability), Accidental Loss of Life and Severe Injury Benefits (also known as Accidental Death and Dismemberment), Accidental Injury (also known as Accident Insurance), Hospital Cash Benefits (also known as Hospital Indemnity).
[2] LIMRA year-end 2023 survey.
[3] S&P Global Data, 2024.
[4] Commercial Lines written premiums include immaterial amounts from Other Commercial.

The Hartford Insurance Group, Inc., (NYSE: HIG) operates through its subsidiaries, under the brand name, The Hartford® For more details about The Hartford Insurance Group, Inc., refer to our most recent Form 10-K and/or 10-Q and the other filings we make with the Securities and Exchange Commission. All of these are available at the Investor Relations section of The Hartford's website: https://ir.TheHartford.com. Current financial information can also be obtained from the latest Investor Financial Supplement accessible through the Investor Relations website. We assume no obligation to update this fact sheet, which speaks as of the dates indicated.

24-EX-2994750 © April 2025 The Hartford

**Insurance Company:** Maxum Indemnity Company

**Named Insured:** Hilbert Group, LLC

# POLICYHOLDER DISCLOSURE STATEMENT UNDER TERRORISM RISK INSURANCE ACT

You are hereby notified that under the federal Terrorism Risk Insurance Act (the "Act"), as amended effective January 12, 2015, you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside of the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES [85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020] OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REINBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**ACCEPTANCE OR REJECTION OF TERRORISM INSURANCE COVERAGE**

_____ I hereby elect to purchase terrorism coverage for a prospective premium of $702 .

_____ I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

| | |
|---|---|
| ____________________ | ____________________ |
| Signature of Insured | Insurance Company |
| ____________________ | ____________________ |
| Print Name/Title | Policy Number |
| ____________________ | |
| Date | |

**TRIA Selection Rejection (01-2015)**

# IMPORTANT NOTICE:

**1. The insurance policy that you are applying to purchase is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.**

**8. If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**

**Date: ______________________________**

**Insured: ___________________________**

**D-1 (Effective January 1, 2020)**

# DILIGENT SEARCH REPORT

1.) ______________________________ hereby submits that he/she is:
(Full Name of the Individual)
(A) Duly licensed under California Department of Insurance license number ________;
**OR** (B) Duly licensed and authorized to act as an endorsee of the organizational license of
______________________., California Department of Insurance license number __________
(Name of the Organization)
and (C) that he/she or said organizational licensee was engaged by the insured named herein, or the insured's broker to obtain insurance as described in this report;
and (D) is the licensee who performed or supervised this diligent search.

---

2. (A) Name of Insured: ______________________________

(B) Address of Insured: ______________________________
(Street and Number)
__________ California __________
(City) (State) (Zip Code)

(C) Description of Risk: ______________________________
e.g. Laundromat, liquor store, NOT TYPE OF COVERAGE)

(D) Location of Risk: ______________________________
(Street and Number)
__________ California __________
(City) (State) (Zip Code)

(E) Type of Insurance coverage: __________
(Enter Appropriate Code Number from Pg. 3)

---

3. If Private Passenger Automobile Liability Insurance is identified on line 2(E), complete the following.
(A) Does the insured qualify as a "Good Driver" under Section 1861.025 of the California Insurance Code?
(CHECK ONE) Yes [ ] NO [x]
(B) Does the coverage that you have placed include, in whole or in part, the limits of coverage provided under the California Automobile Assigned Risk Plan (CAARP)? (CHECK ONE) Yes [ ] NO [x]
.(C) If YES, has this risk been submitted to and found to be ineligible by CAARP?
(CHECK ONE) Yes [ ] NO [x]
If your answer is NO, then this coverage cannot be placed with a non-admitted insurer. (See Insurance Code section 1763.5)

---

4. If Health Insurance is identified on line 2(E), does the insured qualify as a "Small Employer" under Section 10700(x) of the California Insurance Code? (CHECK ONE) Yes [ ] NO [x]

---

5. If this insurance was placed pursuant to Section 125 et seq. of the California Insurance Code governing transactions with risk purchasing groups authorized by the Federal Liability Risk Retention Act of 1986, complete the following.

(A) Provide the name and address of the purchasing group of which the insured is a member __________.
______________________________.
______________________________

6. (A) Describe the diligent efforts made to place this coverage with admitted insurers and describe how the search Was performed (please add additional pages if necessary): Admitted companies were contacted by phone.
______________________________
______________________________
______________________________

(SL-2 (Revised 06/2004)

(B) If search was performed by someone other than the person named on line 1, please provide full name of that individual : _____

---

7. (A) Was the risk described in Section 2 submitted by you or by someone under your supervision to at least (3) Insurers that are admitted in California and who actually write the type of insurance described on lines 2 (C) and 2 (E)? (CHECK ONE) Yes [ ] NO [x ]

(B) If YES, please complete ALL sections of the following table; if NO, skip to Section 8:

| Full Name of Admitted Company | First & last Name of Company Representative AND Telephone Number | Check if Employee (E) or Agent (A) | Month, Year of Declination | Declination Code* |
|---|---|---|---|---|
| 1. | (___) ____-____ Or "Online Declination" Website | E [ ] A [ ] | - | |
| 2. | (___) ____-____ Or "Online Declination" Website | E [ ] A [ ] | - | |
| 3. | (___) ____-____ Or "Online Declination" Website | E [ ] A [ ] | - | |

*Declination Codes: 1 – Company's capacity reached 2 – underwriting reason 3 – refused to state 4 – other

---

8. If 7(A) was answered NO, complete the following:

(A) Did you determine that fewer than 3 admitted insurers actually write the type of insurance described on lines (CHECK ONE) Yes [x] NO [ ]

(B) If NO, please explain in detail why the risk was submitted to less than three admitted insurers in California that write this type of insurance. ______________________________

(C) If YES, please describe how you made this determination: Past experience with this type of risk has found the admitted markets unwilling to provide the coverage needed by the insured due to underwriting reasons.

The undersigned licensee hereby certifies that this report is true and correct, and that this risk is not being placed with a non-Admitted insurer for the sole purpose of securing a rate or premium lower than the lowest rate or premium available from an Admitted insurer.

______________________________ (Signature of Licensee Named on Line 1)

______________________________ (Date)

SL-2 (Revised 06/2004)

STETSON
INSURANCE FUNDING

We are pleased to introduce you to Stetson Insurance Funding, LLC ("Stetson") an affiliate of Ryan Specialty Group that operates its premium finance business. Stetson will be providing an automated premium finance agreement for your clients' commercial insurance risks placed through RT Specialty.

Stetson has teamed up with FIRST Insurance Funding ("FIRST"), the largest premium finance company in North America. Under this collaboration, FIRST will be the lender, as listed on the premium finance agreement, and the loan will be serviced by FIRST. Stetson will be your main point of contact throughout the life of the loan and provide ongoing support to your agency.

## EASY SET UP FOR AGENTS TO OBTAIN FINANCING:

1. Receive an automated premium finance agreement with eligible commercial insurance risks placed through RT Specialty.
2. Make changes to the premium finance agreement by:
   - Visiting our website at www.stetsonfunding.com
   - Emailing us at quotes@stetsonfunding.com
   - Calling us at 1-866-856-1112
3. Down payment to be collected by the agent from the insured in good funds and sent to the General Agent or Carrier.
4. Return the signed premium finance agreement to agreements@stetsonfunding.com.
5. Stetson will finalize the loan and have funding issued for the amount financed.

We look forward to exceeding your premium financing expectations.

# IMPORTANT NOTICE:

**1. The insurance policy that you are applying to purchase is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.**

**8. If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**

**Date: ______________________________**

**Insured: ___________________________**

**D-1 (Effective January 1, 2020)**

# INSTRUCTIONS

**SECTION 1:** Please provide the full name, as it is written on the individual's California license, of the individual who performed or supervised the diligent search. If the search was performed under the individual's license number, enter the individual's California license number in section (A) or if the individual was authorized as an endorsee under an organizational license, enter the name of the organization and its California license number in section (B).

**SECTION 3:** Please provide a complete response to section (A), and if applicable to section (B). Note: The Insurance Commissioner or his designee may require the surplus line broker to conduct additional searches among admitted insurers for similar placements in the future. (California Insurance Code section 1763[b]) An incomplete response will be tagged and may unnecessarily result in a request for a further search to be conducted.

- **SECTION 3(A):** To avoid misidentification among insurers with similar names, please provide the complete name of the admitted insurer as listed in the California Department of Insurance (CDI) Official Publication of Admitted Companies and the insurance company's National Association of Insurance Commissioners (NAIC) number. Please include Insurer contact name and telephone number or email address, or if a website based quoting platform was used, enter the website name.

  Please refer to the California Department of Insurance Official Publication of Admitted Companies.
  https://interactive.web.insurance.ca.gov/apex_extprd/f?p=144:1

- **SECTION 3(B):** The detailed explanation in section 3(B) must include a description of the steps the broker took to determine whether three insurers write the type of insurance or risk and the reasoning for the determination. A conclusory statement is insufficient.

**SIGNATURE:** The Surplus Line Association of California (SLA) will accept a wet signature or a digital and electronic signature from the California Secretary of State's Approved List of Digital Signature Certification Authorities. Please refer to the following link:

https://www.sos.ca.gov/administration/regulations/current-regulations/technology/digital-signatures/approved-certification-authorities/

**IMPORTANT:** Persons who are licensed only as an agent are authorized to offer risks only to admitted insurers for which they are appointed agents (California Insurance Code section 1704). Agents are not authorized to offer a risk to admitted insurers for which they are not appointed agents. A search which is limited to only those companies that have appointed the agent may not necessarily constitute a diligent search of the admitted market.

**WHAT TO FILE:** This report must be filed along with the Confidential Report of Surplus Line Placement. (SL-1 Form). File this Form with signature, and, only if applicable, the Addendum.

**WHERE TO FILE:** The SL-1 Form and this report are to be filed by the surplus line broker with SLA within 60 days of placement of coverage with non-admitted insurer(s).

**MULTIPLE LICENSEES CONDUCTING SEARCH:** If two or more licensees conduct a diligent search of admitted insurers, then each licensee must complete a Diligent Search Report (SL-2 Form). All such reports should be attached to the SL-1 Form.

Please refer to the **Coverage Code List** and **Export Code List** under Resources on the Learning Center for the full list of coverages and their respective codes.

https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/coverage-codes
https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/export-list-codes

The Surplus Line Association of California

# DILIGENT SEARCH REPORT (SL-2 FORM)

**①**

Before completing this report, please review the instructions on page 2.

I, ______________________________, hereby submit that I performed or supervised this diligent search, and I am:

***(A)*** licensed as an individual agent-broker for the applicable lines of insurance or surplus line broker under California license number ______________; **OR**

***(B)*** licensed and an endorsee on the license of ______________________________
(**Full Name of Organization**), California license number ______________________________

**②**

***(A)*** Name of Insured: Hilbert Group LLC

***(B)*** Description of Risk: ______________________________
(e.g., Tattoo Parlor, Cannabis Dispensary, Vacant Building, **NOT TYPE OF COVERAGE**)

***(C)*** Type of Insurance or Coverage Code: ______________________________

**③**

Describe the diligent efforts made to place this coverage with admitted insurers by completing (A) or, if applicable, (B) below.

***(A)*** List the insurers admitted in California who actually write the type of insurance described on lines 2(B) and 2(C) to which you or someone under your supervision submitted the risk described in lines 2(A) through 2(C). Please complete **ALL** sections of the table below.

| | INSURER ① | INSURER ② | INSURER ③ |
|---|---|---|---|
| **NAIC ID** | | | |
| **MONTH, YEAR OF DECLINATION** | | | |
| **FULL NAME OF ADMITTED INSURER** | | | |
| CONTACT INFORMATION – **FULL NAME** | | | |
| **PHONE / EMAIL** | | | |
| ***OR* WEBSITE** | | | |

***(B)*** If you did not list at least three insurers in 3(A) above, describe in detail how you determined that fewer than **THREE** admitted insurers write the type of insurance described on lines 2(B) and 2(C). ______________________________

**④**

Is the type of insurance you are reporting as identified in line 2(C) **private passenger automobile liability or health**? Yes ☐ No ☐

If you answered "yes," please complete the Diligent Search Report Addendum.

The undersigned licensee hereby certifies that this report is true and correct, and that this risk is not being placed with a non-admitted insurer for the sole purpose of securing a rate or premium lower than the lowest rate or premium available from an admitted insurer.

______________________________ ______________________________
(Signature of Licensee Named on Line 1) (Date)

# DILIGENT SEARCH REPORT (SL-2 FORM) ADDENDUM

## PRIVATE PASSENGER AUTOMOBILE LIABILITY INSURANCE COVERAGE OR HEALTH INSURANCE COVERAGE

1. If **Private Passenger Automobile Liability Insurance** is identified on line 2(C), complete the following:

   (A) Does the insured qualify as a "Good Driver" under Section 1861.025 of the California Insurance Code?
   https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1861.025.

   **(CHECK ONE) YES ☐ NO ☐**

   (B) Does the coverage that you have placed include, in whole or in part, the limits of coverage provided under the California Automobile Assigned Risk Plan (CAARP)?

   **(CHECK ONE) YES ☐ NO ☐**

   If YES, has this risk been submitted to and found to be ineligible by CAARP?

   **(CHECK ONE) YES ☐ NO ☐**

   If your answer is NO, this coverage cannot be placed with a non-admitted insurer.
   (See California Insurance Code section 1763.5)
   https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1763.5.

2. If **Health Insurance** is identified on line 2(C), does the insured qualify as a "Small Employer" under

   California Insurance Code section 10700(x)?
   https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=INS&division=2.&title=&part=2.&chapter=8.&article=1.

   **(CHECK ONE) YES ☐ NO ☐**

# EXHIBIT 2

RT RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**May 18, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

| | |
|---|---|
| **Applicant:** | Hilbert Group LLC<br>520 Newport Center Dr Ste 480<br>Newport Beach, CA 92660 |
| **Submission #:** | APP114712274 |
| **Policy Period:** | 06/01/2026 12:01 AM To 06/01/2027 12:01 AM |
| **Coverage:** | Property |
| **Issuing Company:** | AXIS Surplus Insurance Company |

---

**CALIFORNIA SHORT RATE CANCELLATION PENALTY DISCLOSURE**

Please be advised that if you request cancellation of your policy prior to the expiration, the policy may be cancelled at a rate less than pro rata.

Please refer to your policy for specific terms and conditions.

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**May 18, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

| | |
|---|---|
| **Applicant:** | Hilbert Group LLC<br>520 Newport Center Dr Ste 480<br>Newport Beach, CA 92660 |
| **Submission #:** | APP114712274 |
| **Policy Period:** | 06/01/2026 12:01 AM To 06/01/2027 12:01 AM |
| **Coverage:** | Property |
| **Issuing Company:** | AXIS Surplus Insurance Company |

---

We are pleased to submit our proposal for the above captioned applicant.

Please read the attached quote carefully as coverage offered may be more limited than coverage requested.

Note :

Minimum earned premium may apply to this policy. See attached carrier quote for specifics. Please note that all fees are fully earned at inception.

TRIA coverage if applicable is offered on the attached carrier's quote.

Please review any minimum and deposit, audit, and/or cancellation provisions on the attached carrier quote for details regarding possible return premiums and additional premium charges.

I look forward to hearing from you, and please call if you have any questions.

Thank you for your business.

Regards,

Tom Mullins
President
RT Specialty
Tom.Mullins@rtspecialty.com
312-878-8318

Kevin Verkler
Vice President
RT Specialty
kevin.verkler@rtspecialty.com
312-761-1053

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Cost Summary

| | |
|---|---|
| Property Premium | $58,000.00 |
| CA Surplus Lines Tax | $1,740.00 |
| CA Stamp Fee | $104.40 |
| Policy Fee | $1,000.00 |
| **Total Policy Cost** | **$60,844.40** |

**Minimum Earned**
Note: There may be a minimum earned on this policy. Please refer to the carrier quote for more details on the minimum earned percentage.

**Agent Commission: 10.00%**

**Disclosures**

RT Specialty is typically compensated through commission from the insurer for the placement of policies in most transactions. The amount of the commission varies by insurance line and by carrier. RT Specialty might also receive additional compensation. In order to place the insurance requested we may charge a reasonable fee for additional services such as performing a risk analysis, comparing policies, processing submissions, communication expenses, inspections, working with underwriters on the coverage proposal, issuing policies, or servicing the policy after issuance. Any fees charged are fully earned at inception of the policy. Third-party inspection or other fees may be separately itemized upon request. Our fees are applied to new policies, renewal policies, and endorsements. Fees applicable to each renewal and endorsement will be set forth in the quotes. It is the insurance carrier’s decision whether to offer the insurance quoted, and your client’s decision whether to accept the quote. Our fee is not imposed by state law or the Insurer.

Depending upon the Insurer involved with your placement, we might also have an agreement with the Insurer that we are proposing for this placement that might pay us future additional compensation This compensation could be based on formulas that consider the volume of business placed with the Insurer, the profitability of that business, how much of the business is retained for the Insurer’s account each year, and potentially other factors. The agreements frequently consider total eligible premium from all clients placed during a calendar year and any incentive or contingent compensation is often received at a future date. Because of variables in these agreements, we often do not have an accurate means at the time of placement to determine the amount of any additional compensation that might be attributable to any single placement. You, as the retail broker with the direct relationship with the Insured, must comply with all applicable laws and regulations related to disclosure of and consent and agreement to, compensation, and informing the Insured that it may request more information about producer or broker compensation that might be paid in connection with the Insured’s placement. If we request a copy of any legally required insured consent or agreement, you will provide us with a copy. If you need additional information about the compensation arrangements for services provided by RT Specialty affiliates, please contact your RT Specialty representative.

RT Specialty is a division of RSG Specialty, LLC. RSG Specialty, LLC is a Delaware limited liability company and a subsidiary of Ryan Specialty, LLC. In California: RSG Specialty Insurance Services, LLC (License # 0G97516).

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Subjectivities

- Signed and completed Acord Application
- Due Diligence Forms (if required by state - Non-Admitted Only)
- Signed TRIA form if insured is accepting or rejecting terrorism coverage
- This quote is subject to receiving currently valued, acceptable loss runs for the last 5 policy terms prior to binding.
- Signed and completed Supplemental Application
- A written request to bind coverage is required prior to binding
- Please provide Inspection Contact Name and Phone Number at binding (email if available). Coverage is subject to a satisfactory inspection.

**The Subjectivities outlined above are required prior to binding. Please forward all requested information with your bind request. No coverage is considered bound until confirmed in writing and all subjectivities have been addressed.**

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

---

## NOTICE

## Occurrence Limit of Liability

## (OLLE) Scheduled Limits

Blanket coverage for first-party property insurance risks has become increasingly difficult to secure and often is not available regardless of price.

Please note that your quote may not provide coverage on a blanket basis and, based on current market conditions, a blanket coverage option might not be available. Any reference(s) to an Occurrence Limit of Liability Endorsement (OLLE), margin clause, maximum amount payable, and/or scheduled limits indicate that blanket coverage is not provided. Instead, the amount of recovery afforded by the policy is limited in some respect to the amount(s) set forth on the Statement of Values (SOV) provided to the insurer. This potentially can materially reduce the insured's recovery in the event of a loss as compared to blanket coverage. Additionally, the policy language for these clauses may vary by insurer and some insurers limit the amount recoverable for extensions of coverage, additional coverages, and additional covered property to the values as shown on the SOV.

Please review this quote very carefully to determine if coverage is being offered or provided on a blanket, or some other more limited, basis.

As such, we strongly recommend that you confirm that the insured is in agreement that they have provided full and accurate amounts for the values set forth on the SOV. RT Specialty expressly disclaims any responsibility for the accuracy or adequacy of the values provided on an SOV. We also note that all decisions concerning coverage and the application of the terms, provisions, conditions, limitations or exclusions of the policy to any claim are made exclusively by the insurers.

AXIS PROPERTY INSURANCE

05/18/2026

RSG Specialty, LLC, R-T Specialty Div. [Chicago]
540 W Madison, 9th Floor

Chicago, IL 60661

Re: Hilbert Group LLC
520 Newport Center Dr, Ste 480
Newport Beach, CA 92660

Quote No: Q-001-002022522-01
Policy Period: 06/01/2026 to 06/01/2027

Dear Broker:

Many states require AXIS, as an eligible surplus lines insurer, to obtain and report certain Surplus Lines Broker information on policies written. So that we may report to the states accurately, we ask that you carefully review the information below. **Note that if you are required to complete any section of this form, it is imperative that you return this form within thirty (30) days of the policy's effective date**.

**Home State:**

**According to our records, the Policyholder's "Home State" is California.**
*("Home State" as defined by the Nonadmitted and Reinsurance Reform Act of 2010).* **If this is correct, skip to the next section. If this is NOT correct, it is imperative that you complete the following information:**

Named Insured's Corrected Home State (if applicable): ______________________________

Procuring Surplus Lines Broker's Name: ______________________________

Procuring Surplus Lines Broker's Address: ______________________________

Procuring Surplus Lines Broker's "Home State" License #: ______________________________

**New Jersey Home State Risks**:

If the Home State is New Jersey, the Transaction Number is **REQUIRED**:

**Independent Procurement**:

With respect to independently procured policies, the following individual hereby confirms that the required filings will be made and applicable taxes paid for any independently procured coverage:

Name: ______________________________ Date: ______________

By completion of this form, the Procuring Surplus Lines Broker confirms that this policy is issued as a surplus lines policy in accordance with applicable state requirements and that surplus lines tax filings, and any applicable surcharges, fees or assessments, will be filed as required. The Procuring Surplus Lines Broker further agrees that, upon request of AXIS or any insurance regulator, a copy of applicable surplus lines broker license(s) and evidence of payment of required surplus lines taxes will be provided promptly.

Name of Person Completing this Form: ______________________________ Date: ______________

**POLICYHOLDER DISCLOSURE**

**NOTICE OF TERRORISM INSURANCE COVERAGE**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended (the "Act"), you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act, the term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED ABOVE AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE**

If you choose to accept this offer of coverage, you will be charged an additional premium of $5,800.00.

In addition, if you choose to accept this offer of coverage, your policy will be endorsed to add AXIS 1012444 0619 Terrorism Exclusion with Coverage for Certified Acts Endorsement. This endorsement provides coverage only for Certified Acts of Terrorism (as defined) and excludes all other terrorism.

If you choose to reject this offer of coverage, your policy will be endorsed to add AXIS 1012445 0619 Terrorism Exclusion Endorsement. This endorsement amends the policy to provide a full terrorism exclusion.

*Includes copyrighted material 2015 National Association of Insurance Commissioners*

**AXIS QUOTE**

05/18/2026

**FROM:**
10000 Avalon Blvd
Alpharetta, GA 30009

**DELIVERED TO:**
Kevin Verkler
540 W Madison, 9th Floor
Chicago, IL 60661

AXIS is pleased to offer the following quote. This quote contemplates AXIS policy forms and endorsements, which may not conform to industry standard policy language, terms and conditions. The terms and conditions of this quote may not conform to the specifications as originally submitted. Please review this quote carefully.

***This quote expires in 30 days, or on the proposed policy effective date, whichever is earlier***
*(unless extended in writing by AXIS or unless superseded by the binder).*

| | |
|---|---|
| **NAMED INSURED AND ADDRESS** | Hilbert Group LLC<br>520 Newport Center Dr, Ste 480<br>Newport Beach, CA 92660 |
| **BROKER OF RECORD** | RSG Specialty, LLC, R-T Specialty Div. [Chicago]<br>540 W Madison, 9th Floor<br>Chicago, IL 60661 |
| **INSURER** | AXIS Surplus Insurance Company (Non-Admitted)<br>233 South Wacker Drive, Suite 4930<br>Chicago, IL 60606<br>*A Stock Insurer* |

| | |
|---|---|
| **POLICY FORM** | AXIS PROPERTY AXIS 1012401 0525 |
| **POLICY NUMBER** | TBD |
| **POLICY PERIOD** | Effective Date: 06/01/2026<br>Expiration Date: 06/01/2027<br>*Both dates at 12:01 a.m. standard time at the Named Insured's address stated herein.* |
| **POLICY TERRITORY** | The United States of America, including the District of Columbia. |

| | | | |
|---|---|---|---|
| **POLICY PREMIUM/FEES** | Premium based on Total Insured Values of: $12,958,122 | Base Premium: | $58,000 |
| | | Premium Attributable to TRIA (included in Total Policy Premium): | $5,800 |
| | | Total Policy Premium: | $63,800 |
| | | Risk Engineering Fees: | $0 |
| | | | |
| **MINIMUM EARNED PREMIUM (*percentage of Total Policy Premium*)** | 35% | | |
| **CANCELLATION NOTICE** | 30 days except for nonpayment of premium which is 10 days | | |
| **PERCENT OF STATED VALUE** | 100% | | |

| **COINSURANCE** | |
|---|---|
| Real Property | Waived |
| Time Element Business Income including Rental Value | 1/12 Monthly Limit Of Indemnity |

**COVERED CAUSE OF LOSS**

Risk of direct physical loss:

Excluding Earthquake and Earth Movement

Excluding Flood

and as otherwise excluded or limited in this policy.

| **SCHEDULE OF LIMITS OF INSURANCE** | |
|---|---|
| **Policy Limit** | $12,958,122<br>Per **Occurrence** as a result of all covered loss or damage regardless of the number of **Insured Locations**, buildings, coverages or perils insured under this Policy. |
| **Sub-limits** | The sub-limits of insurance set forth below and in any endorsement to this policy are subject to and not in addition to the policy limit of insurance. All sub-limits of insurance are per **occurrence** unless otherwise indicated. If the words "No Coverage" are shown then no coverage is provided for that coverage.<br>When a sub-limit of insurance for a specific type of coverage is shown as "in the aggregate", our maximum limit of liability for that coverage will not exceed such limit during the policy period.<br>When a sub-limit of insurance applies to property, that sub-limit of insurance also applies to any **time element** coverage associated with that property, unless a different sub-limit applies to that time |

| | |
|---|---|
| | element coverage. |
| Real Property | Included |
| Business Personal Property | No Coverage |
| Personal Property Of Others | No Coverage |
| Accounts Receivable | $1,000 |
| Debris Removal | 25% of direct physical loss subject to a maximum of $25,000 |
| Fire Department Service Charge | $1,000 |
| Limited Coverage for Fungus, Wet Rot or Dry Rot | $10,000 in the Aggregate |
| Pollutant Clean Up and Removal | $10,000 in the Aggregate |
| Property in Transit | $10,000 |
| Property off Premises | $10,000 |
| Valuable Papers & Records | $2,500 |
| Time Element Business Income including Rental Value | Per Statement of Values |
| Time Element Extra Expense | $25,000 |
| Extended Business Income | 60 Days |
| Back up of Sewers and Drains | $25,000 |
| Convective Storm | $12,958,122 |
| Electronic Data Processing Equipment Breakdown | $2,500 |
| Electronic Data Processing Media Breakdown | $2,500 |
| Named Storm | $12,958,122 |
| Newly Acquired Property | $250,000 |
| Newly Constructed Property | $250,000 |
| Outdoor Property | $1,000 |
| Outdoor Signs | $2,500 |

| **ORDINANCE OR LAW LIMITS OF INSURANCE**<br>The limits of insurance set forth herein are part of and not in addition to the policy limit. | |
|---|---|
| Coverage A: Loss to Undamaged Portion of the Real Property | Included in the Building Limit |
| Coverages B & C Combined sublimit | 10% of the Building Limit subject to a maximum of $100,000 |
| Coverage D: Time Element Increased Period of Restoration Sublimit | No Coverage |

| **DEDUCTIBLE** | |
|---|---|
| **Policy Deductible** | $10,000 Per **Occurrence** regardless of the number of **Insured Locations**, **buildings**, coverages or perils insured under this Policy as set forth in the Policy |

| | |
|---|---|
| | unless a specific deductible shown below or on an applicable endorsement applies.<br>If two or more deductible amounts provided in this Policy apply to a single **occurrence**, the total to be deducted shall not exceed the largest deductible applicable unless the **occurrence** involved **named storm** or **flood**, in which event all applicable deductibles apply. |

| CONVECTIVE STORM OR NAMED STORM DEDUCTIBLES | | |
|---|---|---|
| | **Applicable To:** | **Dollar or Percentage Amount** |
| Convective Storm Deductible | All **Insured Locations** | $50,000 per **occurrence** |
| Named Storm Deductible | All **Insured Locations** | $50,000 per **occurrence** |

| WAITING PERIODS | |
|---|---|
| The waiting periods set forth on this Declarations page are per **occurrence** unless otherwise indicated and apply in accordance with the policy and applicable endorsements<br>If a waiting period is designated, we will not be liable for any loss under that coverage that occurs during the specified time period immediately following the loss. | |
| Time Element Business Income | 72 Hours |

***COMMENTS:***

- Water deductible $25k

***SUBJECTIVITIES PRIOR TO BINDING:***

***Please provide the following documentation:***

- Receipt of 2023-2026 current valued loss runs WE WILL NOT BIND WITHOUT THIS INFORMATION

***SUBJECTIVITIES PRIOR TO POLICY ISSUANCE:***

***Please provide the following documentation:***

This quote is strictly conditioned upon (1) no material change in exposure or risk contemplated in this quote occurring between the date of this quote and the inception date of the proposed policy, (2) no material change in the information requested by or submitted to the Insurer, and (3) no receipt of any additional information that the insurer determines would materially impact the risk profile. Applicant is under the continuing duty to report any such change. Failure to do so invalidates this quote. In the event of any such change in exposure or risk or receipt of additional information, the insurer may in its sole discretion modify or withdraw this offer, whether or not this offer has already been accepted by the applicant.

Coverage may be bound only pursuant to the terms of a written binder. No authority is granted to the agent or broker to bind coverage.

In order to complete the underwriting process, the insurer requires that the applicant provide all requested additional information and reserves the right to refuse to bind coverage prior to receipt and underwriting approval of this information. However, if the insurer does bind coverage prior to receipt and underwriting approval of such information, the terms and conditions indicated above may be amended at the insurer's sole discretion until such information is received and approved.

| SCHEDULE OF FORMS & ENDORSEMENTS<br>***DOUBLE-CLICK THE PAPERCLIP ICON FOR SPECIMENS:*** | |
|---|---|
| **Policyholder Notices and Policy Forms** | **Form Number and Edition Date** |
| Surplus Lines Broker Statement | AXIS 103 0415 |
| Policyholder Disclosure - Notice of Terrorism Insurance Coverage | TRIA OFFER DISCLOSURE 0418 |
| State Fraud Statement | AXIS 104 0415 |
| PolicyHolder Notice | AXIS 105 0316 |
| Service of Suit | AXIS 106 0415 |
| Policyholder Notice - Economic And Trade Sanctions | AXIS 906 0316 |
| California Disclosure Notice Regarding Calculation Of Return Premium In Event Of Cancellation | AXIS CA901 0815 |
| AXIS Property Form | AXIS 1012401 0525 |
| Signature Page | AXIS 102ASIC 0415 |

| Endorsements | | Form Number and Edition Date |
|---|---|---|
| 1 | Minimum Earned Premium Endorsement | AXIS 1011730 0618 |
| 2 | Back-up of Sewers and Drains (Unrelated to Flood) Endorsement | AXIS 1012403 0619 |
| 3 | Schedule of Valuable Papers and Records | AXIS 1012407 0619 |
| 4 | Electronic Data Processing Equipment Breakdown Endorsement | AXIS 1012416 0619 |
| 5 | Electronic Data Processing Media Breakdown Endorsement | AXIS 1012417 0619 |
| 6 | EXCLUSION OF SPECIFIED COVERED PROPERTY ENDORSEMENT | AXIS 1012423 0322 |
| 7 | Outdoor Signs Coverage Endorsement | AXIS 1012430 0619 |
| 8 | Newly Acquired Property Endorsement | AXIS 1012432 0619 |
| 9 | Newly Constructed Property Endorsement | AXIS 1012433 0619 |
| 10 | Ordinance or Law Endorsement | AXIS 1012434 0619 |
| 11 | Outdoor Property Endorsement | AXIS 1012435 0619 |
| 12 | Exterior Insulation Finish Systems (EIFS) Exclusion | AXIS 1012439 0222 |
| 13 | Roof Surfacing Limited Exclusion Endorsement | AXIS 1012441 0619 |
| 14 | Roofing Material Valuation Condition Endorsement | AXIS 1012442 0619 |
| 15 | Convective Storm And Named Storm Deductibles Endorsement | AXIS 1012455 0619 |
| 16 | Protective Safeguards | AXIS 1012468 0619 |
| 17 | Convective Storm And Named Storm Coverage Endorsement | AXIS 1012481 1120 |
| 18 | Loss Condition Endorsement - Assignment of Benefits Fully Prohibited | AXIS 1013154 0922 |
| 19 | Water Damage Coverage Limitation Endorsement | AXIS 1013611 1124 |
| 20 | PRE-EXISTING DAMAGES EXCLUSION ENDORSEMENT | 1011760 0124 |

| | | |
|---|---|---|
| 21 | ELECTRICAL PANELS EXCLUSION (BY SPECIFIED MANUFACTURERS) | 1013606 1124 |

STETSON
INSURANCE FUNDING

We are pleased to introduce you to Stetson Insurance Funding, LLC ("Stetson") an affiliate of Ryan Specialty Group that operates its premium finance business. Stetson will be providing an automated premium finance agreement for your clients' commercial insurance risks placed through RT Specialty.

Stetson has teamed up with FIRST Insurance Funding ("FIRST"), the largest premium finance company in North America. Under this collaboration, FIRST will be the lender, as listed on the premium finance agreement, and the loan will be serviced by FIRST. Stetson will be your main point of contact throughout the life of the loan and provide ongoing support to your agency.

## EASY SET UP FOR AGENTS TO OBTAIN FINANCING:

1. Receive an automated premium finance agreement with eligible commercial insurance risks placed through RT Specialty.
2. Make changes to the premium finance agreement by:
   - Visiting our website at www.stetsonfunding.com
   - Emailing us at quotes@stetsonfunding.com
   - Calling us at 1-866-856-1112
3. Down payment to be collected by the agent from the insured in good funds and sent to the General Agent or Carrier.
4. Return the signed premium finance agreement to agreements@stetsonfunding.com.
5. Stetson will finalize the loan and have funding issued for the amount financed.

We look forward to exceeding your premium financing expectations.

# IMPORTANT NOTICE:

**1. The insurance policy that you are applying to purchase is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.**

**8. If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**

**Date: ______________________________**

**Insured: ___________________________**

**D-1 (Effective January 1, 2020)**

# INSTRUCTIONS

**SECTION 1:** Please provide the full name, as it is written on the individual's California license, of the individual who performed or supervised the diligent search. If the search was performed under the individual's license number, enter the individual's California license number in section (A) or if the individual was authorized as an endorsee under an organizational license, enter the name of the organization and its California license number in section (B).

**SECTION 3:** Please provide a complete response to section (A), and if applicable to section (B). Note: The Insurance Commissioner or his designee may require the surplus line broker to conduct additional searches among admitted insurers for similar placements in the future. (California Insurance Code section 1763[b]) An incomplete response will be tagged and may unnecessarily result in a request for a further search to be conducted.

- **SECTION 3(A):** To avoid misidentification among insurers with similar names, please provide the complete name of the admitted insurer as listed in the California Department of Insurance (CDI) Official Publication of Admitted Companies and the insurance company's National Association of Insurance Commissioners (NAIC) number. Please include Insurer contact name and telephone number or email address, or if a website based quoting platform was used, enter the website name.

  Please refer to the California Department of Insurance Official Publication of Admitted Companies.
  https://interactive.web.insurance.ca.gov/apex_extprd/f?p=144:1

- **SECTION 3(B):** The detailed explanation in section 3(B) must include a description of the steps the broker took to determine whether three insurers write the type of insurance or risk and the reasoning for the determination. A conclusory statement is insufficient.

**SIGNATURE:** The Surplus Line Association of California (SLA) will accept a wet signature or a digital and electronic signature from the California Secretary of State's Approved List of Digital Signature Certification Authorities. Please refer to the following link:

https://www.sos.ca.gov/administration/regulations/current-regulations/technology/digital-signatures/approved-certification-authorities/

**IMPORTANT:** Persons who are licensed only as an agent are authorized to offer risks only to admitted insurers for which they are appointed agents (California Insurance Code section 1704). Agents are not authorized to offer a risk to admitted insurers for which they are not appointed agents. A search which is limited to only those companies that have appointed the agent may not necessarily constitute a diligent search of the admitted market.

**WHAT TO FILE:** This report must be filed along with the Confidential Report of Surplus Line Placement. (SL-1 Form). File this Form with signature, and, only if applicable, the Addendum.

**WHERE TO FILE:** The SL-1 Form and this report are to be filed by the surplus line broker with SLA within 60 days of placement of coverage with non-admitted insurer(s).

**MULTIPLE LICENSEES CONDUCTING SEARCH:** If two or more licensees conduct a diligent search of admitted insurers, then each licensee must complete a Diligent Search Report (SL-2 Form). All such reports should be attached to the SL-1 Form.

Please refer to the **Coverage Code List** and **Export Code List** under Resources on the Learning Center for the full list of coverages and their respective codes.

https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/coverage-codes
https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/export-list-codes

The Surplus Line Association of California

# DILIGENT SEARCH REPORT (SL-2 FORM)

**①**

Before completing this report, please review the instructions on page 2.

I, ______________________________________, hereby submit that I performed or supervised this diligent search, and I am:

***(A)*** licensed as an individual agent-broker for the applicable lines of insurance or surplus line broker under California license number ______________; **OR**

***(B)*** licensed and an endorsee on the license of ______________________________ (**Full Name of Organization**), California license number ______________________________

**②**

***(A)*** Name of Insured: Hilbert Group LLC

***(B)*** Description of Risk: ______________________________
(e.g., Tattoo Parlor, Cannabis Dispensary, Vacant Building, **NOT TYPE OF COVERAGE**)

***(C)*** Type of Insurance or Coverage Code: ______________________________

**③**

Describe the diligent efforts made to place this coverage with admitted insurers by completing (A) or, if applicable, (B) below.

***(A)*** List the insurers admitted in California who actually write the type of insurance described on lines 2(B) and 2(C) to which you or someone under your supervision submitted the risk described in lines 2(A) through 2(C). Please complete **ALL** sections of the table below.

| | **INSURER ①** | **INSURER ②** | **INSURER ③** |
|---|---|---|---|
| **NAIC ID** | | | |
| **MONTH, YEAR OF DECLINATION** | | | |
| **FULL NAME OF ADMITTED INSURER** | | | |
| CONTACT INFORMATION **FULL NAME** | | | |
| **PHONE / EMAIL** | | | |
| ***OR* WEBSITE** | | | |

***(B)*** If you did not list at least three insurers in 3(A) above, describe in detail how you determined that fewer than **THREE** admitted insurers write the type of insurance described on lines 2(B) and 2(C). ______________________________

______________________________________________________________

**④**

Is the type of insurance you are reporting as identified in line 2(C) **private passenger automobile liability or health**? Yes ☐ No ☐

If you answered "yes," please complete the Diligent Search Report Addendum.

The undersigned licensee hereby certifies that this report is true and correct, and that this risk is not being placed with a non-admitted insurer for the sole purpose of securing a rate or premium lower than the lowest rate or premium available from an admitted insurer.

______________________________ (Signature of Licensee Named on Line 1)

______________________________ (Date)

# DILIGENT SEARCH REPORT (SL-2 FORM) ADDENDUM

## PRIVATE PASSENGER AUTOMOBILE LIABILITY INSURANCE COVERAGE OR HEALTH INSURANCE COVERAGE

1. If **Private Passenger Automobile Liability Insurance** is identified on line 2(C), complete the following:

   (A) Does the insured qualify as a "Good Driver" under Section 1861.025 of the California Insurance Code?
   https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1861.025.

   **(CHECK ONE) YES ☐ NO ☐**

   (B) Does the coverage that you have placed include, in whole or in part, the limits of coverage provided under the California Automobile Assigned Risk Plan (CAARP)?

   **(CHECK ONE) YES ☐ NO ☐**

   If YES, has this risk been submitted to and found to be ineligible by CAARP?

   **(CHECK ONE) YES ☐ NO ☐**

   If your answer is NO, this coverage cannot be placed with a non-admitted insurer.
   (See California Insurance Code section 1763.5)
   https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1763.5.

2. If **Health Insurance** is identified on line 2(C), does the insured qualify as a "Small Employer" under

   California Insurance Code section 10700(x)?
   https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=INS&division=2.&title=&part=2.&chapter=8.&article=1.

   **(CHECK ONE) YES ☐ NO ☐**

# EXHIBIT 3

STETSON INSURANCE FUNDING

We are pleased to introduce you to Stetson Insurance Funding, LLC ("Stetson") an affiliate of Ryan Specialty that facilitates its premium finance requests.

Stetson has teamed up with FIRST Insurance Funding ("FIRST"), one of the largest premium finance companies in North America. Under this collaboration*, FIRST is the lender, as listed on the Premium Finance Agreement, and the loan will be serviced by FIRST.

Stetson will be your Agency's primary point of contact throughout the life of the loan and provide ongoing support to your Agency.

## GUIDELINES TO OBTAIN FINANCING WITH STETSON:

1. **Request changes and provide updates to the premium finance agreement by:**
   - Visiting our website at www.stetsonfunding.com
   - Emailing us at quotes@stetsonfunding.com
   - Calling us at 1-866-856-1112
2. **Loan Down Payment:**
   - **Commercial Lines** – Your Agency collects the down payment from the Insured and sends it to the General Agent or Carrier.
   - **Personal Lines** – The Insured can pay the down payment to your Agency or to FIRST via electronic check by calling 1-800-837-2513; please reference the quote number on the attached Premium Finance Agreement.
3. **Return the signed Premium Finance Agreement, along with the ACH Authorization for Direct Debit, if applicable, to agreements@stetsonfunding.com**
   - FOR PERSONAL LINES ONLY: Stetson must also receive the Truth-In-Lending Disclosures page. If multiple borrowers are listed on the Premium Finance Agreement, eachborrower must sign the Premium Finance Agreement and initial the Truth-In-Lending Disclosures page.
4. **Stetson coordinates with FIRST to finalize the loan and fund accordingly. Note that all loan installment payments are due to FIRST.**

**Thank you for your business.**
**We look forward to exceeding your premium finance expectations!**

**This information does not apply to premium finance requests submitted directly to FIRST.*

INTERACTIVE VOICE RESPONSE: 866.373.3866 | MAIN: 866.856.1112
CUSTOMERSERVICE@STETSONFUNDING.COM | STETSONFUNDING.COM

**LENDER:**
FIRST Insurance Funding
450 Skokie Blvd, Ste 1000
Northbrook, IL, 60062-7917
P:(800) 837-3707, F:(800) 837-3709

# PREMIUM FINANCE AGREEMENT

☐ Personal ☑ Commercial ☐ Additional Premium

Stetson Insurance Funding, LLC
10150 York Road, Fifth Floor
Hunt Valley, MD, 21030
P: (866) 373-3866

STETSON INSURANCE FUNDING

**Quote #: 98412661**

| **INSURED/BORROWER** Customer ID: N/A | **AGENT or BROKER** AGT43542 |
|---|---|
| (Name and Address as shown on Policy)<br>HILBERT GROUP LLC (DIP)<br>520 Newport Center Dr<br>Ste 480<br>Newport Beach, CA 92660-7034 | (Name and Business Address)<br>Trustee Insurance Agency<br>PO Box 190<br>Vicksburg, MI 49097 |

## LOAN DISCLOSURE

| Total Premiums, Taxes, and Fees | Down Payment | Unpaid Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 90,339.15 | 24,684.14 | 65,655.01 | 0.00 | 65,655.01 | 3,889.07 | 69,544.08 | 14.000 % |

***YOUR PAYMENT SCHEDULE WILL BE:*** ***Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000***

| Number of Payments | Amount of Each Payment | **First Installment Due** | 7/1/2026 |
|---|---|---|---|
| 9 | 7,727.12 | **Installment Due Dates** | 1st (Monthly) |

Certain information contained in the Loan Disclosure section may change in accordance with Section 19 of this Agreement.

**INSURED'S AGREEMENT:**

**1. SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies and financed by LENDER hereunder, (c) any credits generated by the financed policies, (d) dividend payments, and (e) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**2. FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the Financed Polices. The finance charge is computed using a 365-day calendar year.

**3. LATE PAYMENT.** For commercial loans, a late charge will be assessed on any installment at least 5 days in default, and the late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less. For personal loans, a late charge will be assessed on any installment 10 days in default, and the late charge will be the lesser of $10 or 5% of the delinquent installment.

**4. PREPAYMENT.** If Insured prepays the loan in full, Insured is entitled to a refund of the unearned finance charge computed according to the Rule of 78s.

**SCHEDULE OF POLICIES**

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00089-SCOTTSDALE INSURANCE COMPANY<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [PR] A/F [4,031.25] | EXLB | 12 | 6/1/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 4,375.00<br>139.13<br>1,000.00 |
| TBD | C00060-StarStone National Insurance Company<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [PR] A/F [5,870.25] | EXLB | 12 | 6/1/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 7,827.00<br>1,000.00<br>0.00 |
| (Policies continued on next page.) | | | | TOTAL | 90,339.15 |

Q# 98412661, PRN: 062326, CFG: Stetson-Default, RT: STETSON - AGENT - 7, DD: N/A, BM: Invoice, Qtd For: A36441 Original, Memo 2

**5. PROMISE TO PAY.** In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies (or their authorized representative) or the Agent or Broker listed above, Insured unconditionally promises to pay LENDER, the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, subject to all the provisions of this Agreement.

**6. POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (a) cancel the Financed Policies in accordance with the provisions contained herein, (b) receive all sums assigned to LENDER, and (c) execute and deliver on behalf of Insured all documents relating to the Financed Policies in furtherance of this Agreement. This right to cancel will terminate only after all of Insured's indebtedness under this Agreement is paid in full. Insured is responsible for repayment of the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, irrespective of whether LENDER exercises this right to cancel the Financed Policies.

**7. SIGNATURE & ACKNOWLEDGEMENT.** Insured has received, reviewed, and signed a copy of this Agreement. By signing below, you certify that you have the requisite authority to (a) enter into this Agreement on behalf of Insured (if applicable, including as agent, trustee, executor, or otherwise in a representative capacity) and any other insureds named on the Financed Policies, and (b) jointly and severally agree on behalf of all insureds named on the Financed Policies to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**

**NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) You have the right to prepay the loan in full and receive a refund of any unearned finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.**

Signature of Insured or Authorized Agent ____ Date ____ Signature of Agent ____ Date ____



FIF1122NBP

**8. APPLICATION OF PAYMENTS.** (a) Payments received by LENDER from Insured shall be applied first to installments, then to any unpaid fees. The payment of installments is prioritized over the payment of fees, which means when LENDER receives partial payments or overpayments of any installment(s), amounts previously applied to fees may be reallocated to enable a full installment(s) to be paid. This payment application method may cause fees to reappear as unpaid and owing after the payment period in which the fees were originally assessed and paid, but does not increase or otherwise change the amount of fees that Insured may be required to pay under this Agreement. (b) Any returned premium received by LENDER from the Financed Policies will be applied to reduce the total unpaid balance under this Agreement, which shall not relieve Insured of its obligation to pay any remaining installments due but may reduce the amount of such installments.

**9. EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER. LENDER will send a Notice of Acceptance to Insured to confirm this Agreement is effective.

**10. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) the Down Payment, if to be collected by LENDER, or any payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in a cancellation of the Financed Policies, Insured agrees to pay a cancellation charge for commercial loans, which will be the maximum permitted by law. No cancellation charge shall apply to personal loans. If cancellation or default occurs, Insured agrees to pay interest on the unpaid balance due at the contract rate until the balance is paid in full.

**11. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER.**

**12. INSUFFICIENT FUNDS CHARGE.** If Insured's payment is dishonored for any reason and if permitted by law, Insured will pay LENDER an insufficient funds charge equal to the maximum fee permitted by law for commercial loans and $10 for personal loans.

**13. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation of the Financed Policies will be credited to the balance due with any excess paid to the Insured; the minimum refund is $1.00. Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the Financed Policies.

**14. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**15. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the Financed Policies or through whom the Financed Policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. The Agent or Broker will receive from LENDER 0.86 % of the Amount Financed stated on page 1 for aiding in the administration of this Agreement relating to the Financed Policies. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**16. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**17. GOVERNING LAW.** The loan terms subject to this Agreement are governed by applicable federal law and Illinois law (to the extent not preempted by federal law), without regard to principles of conflicts of law or choice of law. If any court finds any term herein to be invalid, such finding will not affect the remaining provisions.

**18. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge: (a) the Financed Policies are in full force and effect and that the Insured has not and will not assign any interest in the Financed Policies except for the interest of mortgagees and loss payees, (b) the Down Payment and any past due payments have been paid in full to the Agent or Broker or Lender in cash or other immediately available funds, (c) all information provided herein or in connection with the Agreement is true, correct, and not misleading, (d) Insured is not insolvent nor presently involved in any insolvency proceeding, (e) Insured has no indebtedness to the insurance companies issuing the Financed Policies, (f) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of the Financed Policies, and (g) Insured has disclosed if he or she is a covered member of the armed forces or a dependent of a covered member as defined in the Military Lending Act.

**19. ADDITIONAL PREMIUMS.** (a) Insured expressly agrees to (i) fully and timely comply with all audits by the insurance companies issuing the Financed Policies, (ii) timely provide complete and accurate payroll information, if applicable, and (iii) pay to the insurance companies any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. (b) Insured, or Agent or Broker, may request that LENDER finance additional policies and/or additional premiums (the "Additional Premiums") for Insured during the term of this Agreement. If LENDER agrees, LENDER will send a Notice of Acceptance to Insured to confirm its approval to finance the Additional Premiums. For commercial loans, this Agreement shall be deemed amended on the date of the Notice of Acceptance to consolidate the Additional Premiums with Financed Policies into a single and indivisible loan transaction subject to this Agreement (with applicable changes to the payment schedule), and the Additional Premiums shall be "Financed Policies" on the date of the Notice of Acceptance. For personal loans, LENDER (or Agent or Broker on LENDER's behalf) will provide a separate Premium Finance Agreement to Insured for any Additional Premiums.

**20. CORRECTIONS.** LENDER may insert the names of insurance companies or policy numbers in the Schedule of Policies, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement.

**21. NON-WAIVER.** Not Applicable.

---

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, the signer of this Agreement (whether Insured or its agent) has valid authority to bind Insured and any other insureds named under the Financed Policies to the terms of this Agreement, including the Power of Attorney provision, Insured's signature is genuine, and the Down Payment has been received from Insured (unless the Down Payment was made to Lender), (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the Financed Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, and will promptly reimburse LENDER for any loss or expense incurred in connection with any incidence of fraud or lack of valid authority on behalf of Insured or any other named insureds with respect to the terms of this transaction, the Agreement, or the Financed Policies, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

SCHEDULE OF POLICIES

Insured: HILBERT GROUP LLC (D
Quote #: 98412661

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00208-MAXUM INDEMNITY COMPANY<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [PR] A/F [10,870.21] | GL | 12 | 6/1/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 14,042.00<br>660.00<br>451.62 |
| TBD | C00199-AXIS SURPLUS INSURANCE COMPANY<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [PR] A/F [44,883.30] | PROP | 12 | 6/1/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 58,000.00<br>1,000.00<br>1,844.40 |

FIRST INSURANCE® FUNDING

A WINTRUST COMPANY

450 Skokie Blvd, Ste 1000
Northbrook, IL 60062-7917
Phone: (800) 837-3707 Fax: (800) 837-3709

## FIRST Insurance Funding Agreement: ACH Authorization for Direct Debit

This Agreement governs ACH transactions initiated by FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("FIRST") to credit or charge the Company indicated below. Both parties agree to be bound by NACHA Operating Rules as they pertain to all ACH transactions initiated by FIRST that credit or debit the Company's bank account listed below, and acknowledge that the origination of ACH transactions to the listed account must comply with provisions of U.S. law.

This Agreement provides authorization for recurring ACH Debit transactions to be initiated by FIRST. This Agreement will remain in effect until Company cancels it in writing. Both parties agree that this Agreement constitutes authorization to debit Company's bank account, and Company agrees not to dispute any debits with its bank provided the transaction(s) correspond to the terms indicated in this Agreement and any respective premium finance agreement(s) ("PFA(s)").

**Customer Information:**

Quote #: 98412661
FIRST Account #:
Company Name: HILBERT GROUP LLC (DIP)
Street Address: 520 Newport Center Dr
City, State, Zip Code: Newport Beach, California 92660-7034
Contact:
Phone Number:
Email Address:

**Bank Information:**

Name on Bank Account: ______________________
Bank Name: ______________________
Bank Account #: ______________________
Bank Routing #: ______________________
Bank City/State: ______________________
Account Type: ______________________ (Checking or Savings)

**I Authorize FIRST to initiate ACH Debits and Credits to the bank account indicated above, provided each transaction is initiated according to the terms of this Agreement or any other PFA(s) I may have with FIRST to debit the amount(s) currently due, including any late fees, other charges, or payment shortages.**

SIGNATURE ______________________ DATE ______________________
NAME ______________________ TITLE ______________________

I certify that I am an authorized representative of the Company indicated above and that I have the authority to enter into this Agreement on the Company's behalf. Company understands that this authorization will remain in effect until it is canceled in writing, and agrees to notify FIRST in writing at least 15 days in advance of any changes in its account information or termination of this authorization. Company understands that this authorization applies to the FIRST Account # listed above and subsequent FIRST Account #s. Company understands that because these are electronic transactions, it will have limited time to report and dispute errors. In the case of an ACH Transaction being rejected for Non Sufficient Funds (NSF) Company understands that FIRST may at its discretion attempt to process the charge again within 30 days, and agrees to an additional NSF charge, as allowed by applicable law, for each attempt returned NSF. Company has certified that the above business bank account is enabled for ACH transactions, and agrees to reimburse FIRST for all penalties and fees incurred as a result of Company's bank rejecting ACH debits or credits as a result of the account not being properly configured for ACH transactions. Company acknowledges that the origination of ACH transactions to its account must comply with the provisions of U.S. law.

PLEASE FAX THIS FORM TO (847) 509-7105 OR EMAIL TO CONTROLLER@FIRSTINSURANCEFUNDING.COM

ACHDEBIT0418

# EXHIBIT 4

**RAINES FELDMAN LITTRELL LLP**
Kyra E. Andrassy (State Bar No. 207959)
*kandrassy@raineslaw.com*
Robert S. Marticello (State Bar No. 244256)
*rmarticello@raineslaw.com*
Stephen M. Mott (State Bar No. 362642)
*smott@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Counsel for Debtor
Hilbert Group, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT – SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>HILBERT GROUP, LLC,<br><br>Debtor in Possession. | Case No.: 8:26-bk-10578-MH<br><br>Chapter: 11<br><br>**[PROPOSED] ORDER GRANTING MOTION PURSUANT TO 11 U.S.C. § 364(b) TO ENTER INTO PREMIUM FINANCE AGREEMENT WITH FIRST INSURANCE FUNDING, A DIVISION OF LAKE FOREST BANK & TRUST COMPANY, N.A.**<br><br>Hearing Information:<br>Date: TBD<br>Time: TBD<br>Ctrm: 5C |

At the above date and time, the Court held a hearing on the *Motion Pursuant to 11 U.S.C. § 364(b) to Enter Into Premium Finance Agreement with First Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A.* filed by Hilbert Group, LLC, the debtor in possession (the "Debtor") in this case. For the reasons set forth in the Motion and on the record,

**IT IS ORDERED AS FOLLOWS:**

1. The Motion is granted;

2. Pursuant to Section 364(c)(2) of the Code, the Debtor is authorized to enter into the Finance Agreement, in the form attached to the Motion as Exhibit 3, and the terms of the Finance Agreement are approved. The Debtor is authorized and directed to timely make all payments under the Finance Agreement, and FIRST is authorized to receive and apply such payments to the Indebtedness as provided in the Finance Agreement;

3. FIRST (or its successor or assigns) is granted a first-priority lien and security interest in the Finance Agreement Collateral and any additional premium required thereunder, including all returned premiums and unearned premiums and all other collateral define in the Finance Agreement. Without limitation, FIRST's liens, security interests and rights relating to the Finance Agreement Collateral granted: (i) are senior to (a) the liens of any lender providing DIP or cash collateral financing in these cases, and (b) to any claims under 11 U.S.C. §§ 503, 506(c) or 507(b); and (ii) shall not be subject to avoidance, priming or surcharge;

4. If additional premiums become due to insurance companies under the Policies in the Finance Agreement, the Debtor and FIRST (or its successor or assigns) are authorized to modify the Finance Agreement as necessary to pay additional premiums, without the necessity of further hearing or order of the Court;

5. FIRST is irrevocably appointed as attorney-in-fact in the event of default under the Finance Agreement. If the Debtor does not timely make payments when due or are otherwise in default under the terms of the Finance Agreement, the stay of Section 362(a) shall automatically lift (without further order of the Court) to enable FIRST and/or third parties, including insurance companies providing coverage under the Financed Policies, to take all steps necessary and appropriate to: (i) cancel the Financed Policies; (ii) collect, recover, or return the Finance Agreement Collateral to FIRST; (iii) apply the Finance Agreement Collateral to the Indebtedness; and (iv) take other remedial actions consistent with the terms of the Finance Agreement and applicable non-bankruptcy law. FIRST and/or third parties, including insurance companies providing coverage under the Financed Policies, exercising such rights shall comply with the notice provisions and other provisions of the Finance Agreement;

6. The Finance Agreement and the liens and security interests in the Finance Agreement Collateral granted to FIRST shall continue in full force and effect and the Indebtedness under the Finance Agreement shall remain owing notwithstanding: (i) the dismissal and/or conversion of the Debtor's case; (ii) the discharge of the Debtor; or (iii) the confirmation of a plan of reorganization or liquidation in the Debtor's case. FIRST is extending credit in good faith and is entitled to the protections of Section 364(e) of the Code;

7. If any Indebtedness remains unpaid after application of the Finance Agreement Collateral, following an event of a default or otherwise, such unpaid amount shall be treated as an administrative expense claim pursuant to Section 503(b)(1) of the Code in the Debtor's case;

8. If there are excess returned premiums, unearned premiums, or other Finance Agreement Collateral after application of the Finance Agreement Collateral to the Indebtedness, following an event of default or otherwise, the excess shall be turned over to the Debtor or any trustee subsequently appointed (under Chapter 7 or 11) for the Debtor;

9. If any insurance company needs to perform an audit on any of the Financed Policies, the Debtor and/or any trustee subsequently appointed (under Chapter 7 or 11) for the Debtor, shall cooperate therewith; and

10. The terms of the Order will be immediately effective and enforceable upon entry and that the Court shall retain jurisdiction with respect to any matters related to the implementation of this Order.

###

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4675 MacArthur Court, Suite 1550, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **MOTION PURSUANT TO 11 U.S.C. § 364(b) TO ENTER INTO PREMIUM FINANCE AGREEMENT WITH FIRST INSURANCE FUNDING, A DIVISION OF LAKE FOREST BANK & TRUST COMPANY, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF HOWARD GROBSTEIN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 1, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy** kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Jessica L Bagdanov** jbagdanov@bg.law, ecf@bg.law
- **Matthew Bouslog** mbouslog@allenmatkins.com, ncampos@allenmatkins.com
- **Eric D Goldberg** eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Stephen M. Mott** smott@raineslaw.com, csantiago@raineslaw.com;bclark@raineslaw.com
- **David M Poitras** dpoitras@bg.law
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
- **Christopher A Ward** cward@lowenstein.com, lsuprum@lowenstein.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) ________ I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _______, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/1/2026 | Bambi Clark | /s/ Bambi Clark |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |